Leah M. Beligan, Esq. (SBN 250834)
lmbeligan@bbclawyers.net
Jerusalem F. Beligan, Esq. (SBN 211258)
jbeligan@bbclawyers.net
**BELIGAN LAW GROUP, LLP**
19800 MacArthur Blvd., Ste. 300
Newport Beach, CA 92612
Telephone: (949) 224-3881

James L. Simon (*pro hac vice* forthcoming)          Michael L. Fradin (*pro hac vice* forthcoming)
james@simonsayspay.com                                mike@fradinlaw.com
**SIMON LAW CO.**                                    **FRADIN LAW**
5000 Rockside Road                                    8401 Crawford Ave., Ste. 104
Liberty Plaza – Suite 520                             Skokie, IL 60076
Independence, OH 44131                                Telephone: (847) 986-5889
Telephone: (216) 816-8696

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Michael Massel, individually, and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION** |
| vs. | **COMPLAINT** |
| Successfulmatch.com d/b/a Millionaire Match; and DOES 1 through 10, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## PRELIMINARY STATEMENT

Now comes Plaintiff, Michael Massel ("Plaintiff"), on behalf of himself and all others similarly situated, through counsel, and pursuant to 735 ILCS §§ 5/2-801 and 2-802, and Fed. R. Civ. P. 23, against Defendants Successfulmatch.com d/b/a Millionaire Match ("Millionaire Match"), its subsidiaries and affiliates and DOES 1 through 10 (collectively, "Defendants"), to redress and curtail Defendants' unlawful collections, obtainments, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric identifiers and/or biometric information (collectively referred to herein as "biometric data" and/or "biometrics"). Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Millionaire Match is a California corporation which operates as "the largest millionaire dating service" boasting over 5,000,000 active users in its online dating community. *See* millionairematch.com (last visited May 12, 2023).

2.      Plaintiff opened a Millionaire Match account on or about January 7, 2023.

3.      Millionaire Match requires all of its users, including Plaintiff, to verify their identities by uploading a picture of (1) a valid state-issued identification; or (2) a real time portrait of their face, i.e. a "selfie."

4.      Millionaire Match then scans the state-issued ID or the "selfie" photographs, creates a biometric template of the user's face, and compares the user's facial biometrics to the photographs which the user is posting in their online dating profiles in order to verify the identity of all Millionaire Match users.

5.      Millionaire Match collects, stores, possesses, otherwise obtains, uses, and disseminates its users' biometric data to, amongst other things, further enhance Millionaire Match and its online dating platform.

6.      Millionaire Match wrongfully profits from the facial scans it has collected or otherwise obtained from its users.

7.      Facial geometry and fingerprint scans are unique, permanent biometric identifiers associated with each user that cannot be changed or replaced if stolen or compromised. Millionaire Match's unlawful collection, obtainment, storage, and use of its users' biometric data exposes them to serious and irreversible privacy risks. For example, if Millionaire Match's database containing facial geometry scans or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed, Millionaire Match users have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

8.      The Illinois legislature enacted BIPA to protect residents' privacy interests in their biometric data. *See Heard v. Becton, Dickinson & Co*., 440 F. Supp. 3d 960, 963 (N.D. Ill. 2020), citing *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1199 (2019).

9.      Courts analogize an individual's privacy interest in their unique biometric data to their interest in protecting their private domain from invasion, such as from trespass. *See Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), as amended on denial of reh'g and reh'g *en banc*, (June 30, 2020) and opinion amended on denial of reh'g *en banc*, 2020 U.S. App. LEXIS 20468, 2020 WL 6534581 (7th Cir. 2020).

10.     In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which has been selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" (740 ILCS 14/5(b)) – the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like Millionaire Match may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly-available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a)-(b).

11.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id*.

12.     Specifically, upon information and belief, Millionaire Match has created, collected, and stored thousands of "face templates" – highly detailed geometric maps of the face – and fingerprints from countless Illinois residents whose selfies and state-issued ID's were collected by Millionaire Match. Each face template that Millionaire Match extracts is unique to a particular individual in the same way that a fingerprint or voiceprint uniquely identifies a particular

individual.

13.     Millionaire Match is a "private entity" as that term is broadly defined by BIPA and Millionaire Match is subject to all requirements of BIPA. *See* 740 ILCS § 14/10.

14.     The true names and capacities, whether individual, corporate, associate, representative, alter ego or otherwise, of defendants named in this action as DOES 1 through 10 inclusive are presently unknown to Plaintiff, who therefore sues such defendants by such fictitious names. Plaintiffs will seek to amend this Complaint to allege the true names and capacities of DOES 1 through 10 when the same have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff and the Class Members for the events, happenings, and damages set forth below.

15.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times mentioned herein, Defendants acted as agents, employees, supervisors, partners, conspirators, servants and/or joint venturers of each other, and in doing the acts hereafter alleged, were acting within the course, scope, and authority of such agency, employment, partnership, conspiracy, enterprise and/or joint venture, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants.

## JURISDICTION AND VENUE

16.     This is a Class Action Complaint for violations of the Illinois Biometric Information Privacy Act (740 ILCS 14/1 *et seq*.) brought pursuant to Fed. R. Civ. P. 23 seeking statutory and actual damages.

17.     Venue is proper in this Court because a substantial amount of the acts and omissions giving rise to this action occurred within this judicial district.

18.     This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Plaintiff and the proposed class members are all residents of Illinois, Millionaire Match is domiciled within this judicial district and the amount in controversy exceeds $75,000.

19.     This Court has jurisdiction over this dispute pursuant to the Class Action Fairness Act ("CAFA") because the prospective class includes over 100 people and the amount in controversy exceeds $5,000,000.

20.     At all relevant times, Plaintiff and the proposed Class are residents of the state of Illinois and the violations of BIPA as detailed herein occurred while Plaintiff and the proposed Class were located in Illinois.

21.     At all relevant times, Millionaire Match is incorporated under the laws and jurisdiction of California, and Millionaire Match's principal place of business is located at 800 West El Camino Real #180, Mountain View, California 94040.

## DIVISIONAL ASSIGNMENT

22.     The San Jose is the appropriate division for this case, pursuant to Civil L.R. 3-2(c), because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in the County of Santa Clara and Millionaire Match is headquartered in the City of Mountain View, California.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

23.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

24.     Plaintiff opened a Millionaire Match account on or around January 7, 2023.

25.     As part of signing up, and/or gaining access to his Millionaire Match account, Plaintiff was required to upload a picture of his state-issued ID or a real time portrait of his face.

26.    Millionaire Match then scanned Plaintiff's identification verification photographs, creating a biometric template of Plaintiff's face and biometric identifiers, and compared Plaintiff's biometric identifiers to the photographs which Plaintiff posted on his Millionaire Match profile in order to verify Plaintiff's identity.

27.    In other words, Millionaire Match collected and retained biometric information for the purpose of verifying Plaintiff's identity prior to opening a Millionaire Match profile in Plaintiff's name.

28.    Millionaire Match again collected and retained biometric information for the purpose of verifying Plaintiff's identity each time that Plaintiff uploaded a new picture to his Millionaire Match profile.

29.    At all relevant times, Millionaire Match had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with Millionaire Match, whichever occurs first.

30.    Ostensibly, the purpose of Millionaire Match's collection of Plaintiff's facial geometry was to verify Plaintiff's identity prior to opening a Millionaire Match profile in Plaintiff's name.

31.    As such, Plaintiff's facial geometry should have been permanently destroyed by Millionaire Match following the opening of Plaintiff's Millionaire Match account.

32.    However, Millionaire Match failed to permanently destroy Plaintiff's facial geometry following the opening of Plaintiff's Millionaire Match account and instead retained Plaintiff's biometric information.

33.     As such, Millionaire Match's retention of Plaintiff's biometric information was unlawful and in violation of 740 ILCS § 14/15(a).

34.     Millionaire Match did not inform Plaintiff in writing that it was collecting or storing his biometric information.

35.     Instead, Millionaire Match simply instructed Plaintiff to upload his state issued identification forms or "selfie" photograph as part of the overall account opening process.

36.     In fact, Millionaire Match made no mention of biometric information, collection of biometric information, or storage of biometric information.

37.     Moreover, Millionaire Match did not inform Plaintiff in writing of the specific purpose and length of term for which his biometric information was being collected, stored, and used.

38.     Millionaire Match collected, stored, and used Plaintiff's biometric information without ever receiving a written release executed by Plaintiff in which he consented to or authorized Millionaire Match to do same.

39.     Millionaire Match collected, stored, and used Plaintiff's biometric information without ever receiving Plaintiff's informed consent to do same.

40.     Millionaire Match has sold, leased, traded, or otherwise profited from Plaintiff's biometric information. 740 ILCS § 14/15(c).

41.     Millionaire Match would not have opened an account in Plaintiff's name had Plaintiff not allowed Millionaire Match to collect his biometric information and allowed Millionaire Match to store or otherwise retain same.

42.     As such, any and all revenue or profits which Millionaire Match obtained as a result of Plaintiff's patronage of Millionaire Match was predicated upon Plaintiff providing Millionaire Match with his biometric information and Millionaire Match's storage or retention of same.

43.     Additionally, Millionaire Match disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric information (1) without Plaintiff's consent; (2) without Plaintiff's authorization to complete a financial transaction requested or authorized by Plaintiff; (3) without being required by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

44.     Upon information and belief, Millionaire Match disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric information to numerous third party service providers for Millionaire Match's business purposes, including but not limited to, third party providers that provide business services to Millionaire Match, third party service providers that provide professional services to Millionaire Match, and third party service providers that provide technical support functions to Millionaire Match.

45.     Millionaire Match's collection and retention of biometric information as described herein is not unique to Plaintiff and is instead part Millionaire Match's policies and procedures which Millionaire Match applies to all of its users, including the Class Members.

## **RULE 23 CLASS DEFINITION AND ALLEGATIONS**

46.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

47.     Plaintiff brings Claims for Relief in violation of BIPA as a class action under Rule 23(a), (b)(2) and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following Rule 23 Class:

**All Illinois residents who had their biometric information collected by Millionaire Match at any point in the five (5) years preceding the filing of this Complaint (the "Class Members").**

48.     In the alternative, and for the convenience of this Court and the parties, Plaintiff may seek to certify other subclasses at the time the motion for class certification is filed.

49.     **Numerosity (Rule 23(a)(1))**. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that there are more than 1,000 people who satisfy the definition of the Class.

50.     **Existence of Common Questions of Law and Fact (Rule 23(a)(2))**. Common questions of law and fact exist as to Plaintiff and the Class Members including, but not limited to, the following:

a.     Whether Millionaire Match possessed Plaintiff's and the Class Members' biometric identifiers or biometric information without first developing a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with Millionaire Match, whichever occurs first.

b.     Whether Millionaire Match collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the Class Members' biometric identifiers or biometric information, without first: (1) informing Plaintiff and the Class Members in writing that a biometric identifier or biometric information is being collected or stored; (2) informing Plaintiff and the Class Members in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used; and (3) receiving a written release executed by Plaintiff and the Class Members

c.      Whether Millionaire Match sold, leased, traded, or otherwise profited from Plaintiff's and the Class Members' biometric identifiers or biometric information.

d.      Whether Millionaire Match disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric identifiers or biometric information (1) without Plaintiff's and the Class Members' consent; (2) without Plaintiff's and the Class Members' authorization to complete a financial transaction requested or authorized by Plaintiff and the Class Members; (3) without being required by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

e.      The damages sustained and the proper monetary amounts recoverable by Plaintiff and the Class Members.

51.      **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, had his biometric identifiers and biometric information collected, retained or otherwise possessed by Millionaire Match without Millionaire Match's adherence to the requirements of BIPA as detailed herein.

52.      **Adequacy (Rule 23(a)(4))**. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions.

53.      **Injunctive and Declaratory Relief (Rule 23(b)(2))**. Class certification of the Rule 23 claims is appropriate under Rule 23(b)(2) because Millionaire Match acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

54.      **Predominance and Superiority of Class Action (Rule 23(b)(3))**. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of

law and fact common to the Class Members predominate over questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Millionaire Match's common and uniform policies and practices illegally deprived Plaintiff and the Class Members of the privacy protections which BIPA seeks to ensure; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Millionaire Match's practices.

55.     Plaintiff intends to send notice to all Class Members to the extent required by Fed. R. Civ. P. 23.

## COUNT ONE: VIOLATION OF 740 ILCS § 14/15(a)

**(Brought by Plaintiff on behalf of himself and the Class Members against all Defendants)**

56.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

57.     A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in

possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines. 740 ILCS § 14/15(a).

58.     Millionaire Match collected Plaintiff's and the Class Members fingerprints and created biometric templates of the Plaintiff's and the Class Members' faces which qualifies as biometric information as defined by BIPA.

59.     At all relevant times, Millionaire Match had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with Millionaire Match, whichever occurs first.

60.     Ostensibly, the purpose Millionaire Match's collection of Plaintiff's and the Class Members' facial geometry was to verify Plaintiff's and the Class Members' identities prior to opening a Millionaire Match account in their names and the purpose of Millionaire Match's collection Plaintiff's and the Class Members' fingerprints was to verify Plaintiff's and the Class Members' identities when they logged in to Millionaire Match's mobile app.

61.     As such, Plaintiff's and the Class Members' facial geometry should have been permanently destroyed by Millionaire Match following the opening of their Millionaire Match accounts.

62.     However, Millionaire Match failed to permanently destroy Plaintiff's and the Class Members' facial geometries following the opening of their Millionaire Match accounts and instead retained Plaintiff's and the Class Members' biometric information.

63.     As such, Millionaire Match's retention of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(a).

## COUNT TWO: VIOLATION OF 740 ILCS § 14/15(b)

**(Brought by Plaintiff on behalf of himself and the Class Members against all Defendants)**

64.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

65.     No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS § 14/15(b).

66.     Millionaire Match did not inform Plaintiff and the Class Members in writing that Millionaire Match was collecting or storing their biometric information.

67.     Instead, Millionaire Match simply instructed Plaintiff and the Class Members to upload their state issued identification forms or "selfies" as part of the overall account opening process.

68.     In fact, Millionaire Match made no mention of biometric information, collection of biometric information, or storage of biometric information.

69.     Moreover, Millionaire Match did not inform Plaintiff and the Class Members in writing of the specific purpose and length of term for which their biometric information was being collected, stored, and used.

70.     Millionaire Match collected, stored, and used Plaintiff's and the Class Members' biometric information without ever receiving a written release executed by Plaintiff and the Class Members which would consent to or authorize Millionaire Match to do same.

71.     As such, Millionaire Match's collection of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(c).

## COUNT THREE: VIOLATION OF 740 ILCS § 14/15(c)

**(Brought by Plaintiff on behalf of himself and the Class Members against all Defendants)**

72.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

73.     No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information. 740 ILCS § 14/15(c).

74.     Millionaire Match has sold, leased, traded, or otherwise profited from Plaintiff's and the Class Members' biometric information. 740 ILCS § 14/15(c).

75.     Millionaire Match would not have opened an account in Plaintiff's or the Class Members' names had Plaintiff and the Class Members not allowed Millionaire Match to collect their biometric information and allowed Millionaire Match to store or otherwise retain same.

76.     Plaintiff and the Class Members were never offered any other means of verifying their identities in order to open Millionaire Match accounts.

77.     As such, any and all revenue or profits which Millionaire Match obtained as a result of Plaintiff's and Class Members' patronage of Millionaire Match was predicated upon Plaintiff and the Class Members providing Millionaire Match with their biometric information and Millionaire Match's storage or retention of same.

78.     While discovery will ascertain all of the ways in which Millionaire Match has used Plaintiff's and the Class Members' biometric information, Millionaire uses Plaintiff's and the Class Members' biometric information for business purposes, in furtherance of their business interests, and for more specific profit-driven activities such as analytics and research.

79.     Millionaire Match's selling of, leasing of, trading of, or otherwise profiting from Plaintiff's and the Class Members' biometric information is unlawful and in violation of 740 ILCS § 14/15(c).

**COUNT FOUR: VIOLATION OF 740 ILCS § 14/15(d)**

**(Brought by Plaintiff on behalf of himself and the Class Members against all Defendants)**

80.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

81.     No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. 740 ILCS § 14/15(d).

82.     While discovery will ascertain all of the ways in which Millionaire Match disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric information, Millionaire Match disclosed, redisclosed, or otherwise disseminated Plaintiff's and

the Class Members' biometric information to numerous third party service providers for Millionaire Match's business purposes, including but not limited to, third party providers that provide business services to Millionaire Match, third party service providers that provide professional services to Millionaire Match, and third party service providers that provide technical support functions to Millionaire Match.

83.     Millionaire Match's disclosures, redisclosures, or otherwise disseminating of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(d).

## PRAYER FOR RELIEF

**WHEREFORE**, individually, and on behalf of the Class Members, Plaintiff prays for: (1) certification of this case as a class action pursuant to Fed. R. Civ. P. 23 appointing the undersigned counsel as class counsel; (2) a declaration that Millionaire Match has violated BIPA, 740 ILCS 14/1 *et seq*.; (3) statutory damages of $5,000.00 for the intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 per violation pursuant to 740 ILCS 14/20(1) in the event the court finds that Millionaire Match's violations of BIPA were not willful; (4) reasonable attorneys' fees and costs and other litigation expense pursuant to 740 ILCS 14/20(3); (5) actual damages; and (6) for any other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

Dated: May 16, 2023                    Respectfully submitted,


                                       **BELIGAN LAW GROUP, LLP**


                                       By:  /s/ *Leah M. Beligan*
                                       Leah M. Beligan, Esq. (SBN 250834)
                                       lmbeligan@bbclawyers.net
                                       Jerusalem F. Beligan, Esq. (SBN 211258)
                                       jbeligan@bbclawyers.net
                                       19800 MacArthur Blvd., Ste. 300
                                       Newport Beach, CA 92612
                                       Telephone: (949) 224-3881


                                       **FRADIN LAW**

                                       s/ *Michael L. Fradin*
                                       Michael L. Fradin, Esq. (pro hac vice forthcoming)
                                       8 N. Court St. Suite 403
                                       Athens, Ohio 45701
                                       Telephone: 847-986-5889
                                       Facsimile: 847-673-1228
                                       Email: mike@fradinlaw.com

                                       **SIMON LAW CO.**

                                       By: /s/ *James L. Simon*
                                       James L. Simon (pro hac vice forthcoming)
                                       Simon Law Co.
                                       5000 Rockside Road
                                       Liberty Plaza – Suite 520
                                       Independence, OH 44131
                                       Telephone: (216) 816-8696
                                       Email: james@simonsayspay.com